IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| GIONNI CARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | JUDGE |
| ) | |
| METROPOLITAN GOVERNMENT OF ) | JURY DEMAND |
| NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESSEE ) | |
| ) | |
| Defendant. ) | |

# COMPLAINT

**COMES NOW** Plaintiff, **GIONNI CARR** (hereafter "Plaintiff" or "Mr. Carr"), by and through counsel, and respectfully submits his Complaint against Defendant **METRO GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE** (hereafter "Defendant"); and in support thereof would allege as follows:

## PARTIES

1. Plaintiff, Gionni Carr, is a resident of Davidson County, Tennessee.

2. Defendant, Metropolitan Government of Nashville and Davidson County, Tennessee ("MNPS" or "Defendant") is a governmental entity pursuant to the provisions of T.C.A. 29-20-201, *et seq.*, of which Metro Public Schools of Nashville is an entity under, located in Nashville, Tennessee.

3. Defendant may be served through the Director of Law, Jon Cooper, Esq., Metropolitan Government of Nashville, Department of Law, Metro Courthouse, Suite 108, P.O. Box 196300, Nashville, Tennessee 37219.

1

## JURISDICTION AND VENUE

4. All of the events complained of herein occurred in this Judicial District and the defendant is an entity contained herein, which gives rise to venue in this district, under 28 U.S.C. § 1391(b).

5. This Court has jurisdiction under 28 U.S.C. 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States.

6. This court has jurisdiction under 28 U.S.C. 1343(4) to hear Plaintiff's claims to recover damages and secure equitable relief under any Act of Congress providing for the protection of civil rights.

## FACTS

7. Mr. Carr became employed with Defendant in or around June of 2012 as a substitute teacher.

8. For the 2014-2015 school year, Mr. Carr was employed at Margaret Allen Middle School ("Margaret Allen") as a Sixth grade math and science teacher.

9. Kisha Stinson-Cox ("Ms. Cox") was the Principal, Ms. Bryant was the Assistant Principal and Evelyn Jones ("Jones") was the Numeracy/ Data Coach and his direct supervisor.

10. Mr. Carr did his best to foster positive, healthy, strong and professional relationships throughout the school and especially within his sixth grade team of teachers.

11. In or around September of 2014, Mr. Carr began being demeaned and harassed by Jones.

12. For instance, during the sixth grade planning block, Jones called a meeting for her team that was scheduled to last approximately twenty (20) minutes. The purpose of the meeting was to learn how to grade scantrons and enter assessment data into the excel

tracker. There was some confusion among teachers about the process, and at some point Mr. Carr got up to point on the overhead projector where he personally needed clarification.

13. After this meeting, Jones called Mr. Carr into her office. Jones proceeded to yell at Mr. Carr and call him names; such as: disrespectful, childish, arrogant, a dictator, immature, and personally attacked his character and leadership style.

14. During Jones' tirade she also stated the following: That Mr. Carr's team members had told her that he talks to them like a dictator but wasn't actually doing his job; the administration had told her Mr. Carr was hard-headed, selfish and disrespectful; Mr. Carr's team members at his last school allegedly told her that he was hard to work with and not a team player; Mr. Carr's old administration told her that he had a bad attitude and was disrespectful; other teachers in the building told her how arrogant and self-centered he was; and Jones told him to never try to take over her meeting again because she "knows how to do her job".

15. Mr. Carr was completely shocked and taken aback by Jones' statements and demeanor during this encounter.

16. Afterwards, Mr. Carr outlined these details in an email to the Administration of Margaret Allen and made it known that he wanted to file a grievance against Jones for her treatment of him. He was told by Administration that no actions would be taken against Jones nor would any actions be taken to resolve the situation.

17. Mr. Carr expressed concerns that Jones, as his direct report, met with Administration monthly to discuss the strengths, weaknesses, and next steps for teachers she was assigned to support. He was uncomfortable with Jones talking to anyone about his

professional practices considering the demeaning way in which she had spoken to and about him in the past. He was falsely told by Assistant Principal Bryant that Jones was not reporting feedback about any teachers to Administration.

18. Mr. Carr asked Administration if he could avoid any further hostile encounters with Jones by being assigned to another coach within the building. He also asked if he could step down as the team lead to minimize interaction with Jones and he was told no.

19. Mr. Carr requested a meeting with himself, Jones and Administration to resolve the matter and was refused. Eventually a meeting was set up with him, Jones and the school guidance counselor; Mr. Carr protested until a member of Administration came. The resolution presented to him at that time was to "just let it go."

20. On or around September 12, 2014, Mr. Carr and another sixth grade teacher, Mr. Ly, met with Jones and she behaved unprofessionally throughout the entire meeting. She later sent an e-mail apologizing "for her impatience."

21. In or around November of 2014, Ms. Howell, the guidance counselor, conducted a training regarding conflict resolution strategies and how to handle situations involving bullying.

22. Mr. Carr again made numerous attempts to report Jones' actions to Administration in order to ensure his work safety and attempt to decrease the unwarranted hostility within his work environment.

23. In or around March of 2015, Mr. Carr endured another major incident with Jones in which she undermined his credibility and lied about her involvement in a situation with a student.

24. Per the school's basketball contract, a student is not allowed to wear a warm-up jacket to school for away games if he is currently undergoing discipline. Mr. Carr observed a student violating this rule and had him take his jacket off to follow the school's policy. Jones got involved and took the student's jacket and told Mr. Carr that the student's parent was in the office. In fact, Jones never spoke to the student's parent and the parent was never at the school. Jones maintained that she told Mr. Carr that the student was *about* to call his mom to retrieve his jacket. The students' story matched Mr. Carr's version of events, not Jones'.

25. Mr. Carr again complained to Administration of harassment and being targeted by Jones.

26. On or around April 2, 2015, there was a meeting with Mr. Carr, Assistant Principal Bryant, and Jones regarding this incident with a student. Instead of addressing the hostility of Jones, Bryant began questioning Mr. Carr about how he even saw the student, why was he not in his classroom, and told him he was making a "mountain out of a mole hill" and was taking the situation "personally instead of professionally."

27. Mr. Carr tried to explain that he had his co-teacher watching the classroom while he went to make copies and that is when he saw the student in the hallway with the jacket on. He expressed that he only approached the student in order to comply with the school's dress code and the basketball contract.

28. On or around April 2, 2015, Mr. Carr emailed Administration again requesting a meeting with all parties to discuss a resolution to the issues he was having with Jones. He expressed in that email that she made him feel uncomfortable and unsafe in his work environment.

29. In or around April of 2015, Bryant made the decision to transfer a difficult student to Mr. Carr's classroom in retaliation for his prior complaints. When Mr. Carr asked if there was anything in particular he needed to know about the student, she responded no. However; Mr. Carr already knew from the other sixth grade teacher that the student tried to assault him once.

30. Mr. Carr sent an email to Cox expressing his feeling of being subjected to the personal views and personal opinions of his school's administration in regard to his complaints being dismissed as "minor."

31. Finally, Mr. Carr was granted a meeting with himself, Jones, Assistant Principal Bryant and Principal Cox. He was bullied and yelled at by them all throughout the meeting and felt uncomfortable and intimidated the entire time. Mr. Carr requested that Mrs. Howell the School Guidance Counselor be present.

32. Mr. Carr voiced that he felt unfairly targeted and was mentally and emotionally unstable as a result, which was affecting his teaching. His concerns were again labelled a "minor issue" while the three women proceeded to laugh at him throughout the meeting and team up against him when he was voicing his feelings and opinions.

33. Principal Cox ended the meeting by telling Mr. Carr that it was in his best interest to find another job for the next year because of his numerous complaints; she stated his complaints were making the environment negative and hostile for others.

34. Only a few hours earlier, Cox had sent out an email congratulating Mr. Carr for being featured in the Tennessean for winning the Blue Ribbon Teaching Award.

35. Also, prior to this, Mr. Carr had been chosen to mentor another teacher, as well as being the spear head for the basketball program and an anti-bullying campaign throughout the

6

school, he helped organize the school's first pep rally, and Cox even had teachers district-wide come observe Mr. Carr's classroom; all of which belies the assertion that he was creating a "negative and hostile environment."

36. Mr. Carr made several requests to remedy the situation and hostile environment including but not limited to stepping down, 7th & 8th grade printing privileges and getting a new coach.

37. Mr. Carr observed female teachers being treated more favorably while he and other male employees were subjected to constant harassment and discrimination.

38. Mr. Carr was terminated from Margaret Allen effective on May 27, 2015.

39. Mr. Carr timely filed a charge with the EEOC alleging discrimination based on his gender, retaliation for prior protected activity, and a hostile work environment. He received his Right to Sue on or before November 4, 2015.

## CAUSES OF ACTION

**Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e: GENDER, RETALIATION and HOSTILE WORK ENVIRONMENT**

40. Plaintiff incorporates by reference all preceding paragraphs.

41. At all times complained herein, Defendant was an employer under the terms of Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq*.

42. Plaintiff suffered continuous and pervasive harassment based upon his gender that adversely affected his employment and Defendant knew or should have known about the harassing conduct but failed to take corrective action.

43. Defendant engaged in, condoned, and ratified harassing and discriminatory conduct of its employees which resulted in a hostile work environment.

7

44. Defendant did segregate or classify Plaintiff based upon his gender and complaints of a hostile work environment in a way that would tend to adversely affect his status as an employee.

45. Defendant willfully ignored Plaintiff's complaints of being subjected to a hostile work environment due to his gender.

46. The conduct described herein constitutes unlawful discriminatory practices on the part of the Defendant in violation of Title VII of the Civil Rights act of 1964.

47. Defendant did segregate or classify Plaintiff, based upon his gender, in a way that deprived employment opportunities to Plaintiff.

48. Defendant's decision to treat Plaintiff less favorably than his female co-workers resulted from a knowing and intentional pattern of discrimination.

49. Plaintiff was terminated from Margaret Allen in furtherance of Defendant's discrimination and harassment of males as well as in retaliation for his participation in a protected activity.

50. The discriminatory employment practices, described herein, have caused Plaintiff to experience harm, including loss of compensation, wages back and front pay, and other employment benefits. Plaintiff has suffered emotional distress, humiliation, indignity and resulting injury and loss along with other damages.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for the following relief:

1. That proper process issue be served upon the defendant and that the defendant be required to answer within the time prescribed by law.

2. The plaintiff receive compensatory damages, reinstatement, back pay, and front pay against the defendant in an amount supported by the proof in this cause.

3. That this Court grant a permanent injunction in joining the defendant, as officers, successors, assigns and all persons in active consort or participation with it, from engaging in employment practice which discriminates on the basis of age, gender, and/or disability.

4. That this matter be set for a trial by jury.

5. That the plaintiff be awarded his reasonable fees, costs, fees and expenses incurred herein.

6. For all such other general or specific relief to which the plaintiff may be entitled as the Court deems and as justice and equity require.

Respectfully submitted,

ANDY L. ALLMAN & ASSOCIATES

/s/ Andy L. Allman
Andy L. Allman, BPR No. 17857
Allison S. Porter, BPR # 31766
131 SAUNDERSVILLE RD., SUITE 110
Hendersonville, TN 37075
Telephone:     (615) 933-0110
Facsimile:      (615) 265-8766
andy@andylallman.com